762 A.2d 172

**Robert Lee THACKER, et al.,**

v.

**CITY OF HYATTSVILLE, et al.**

**No. 2131, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 14, 2000.

270

272

Elliot P. Dematteis, Annapolis, for appellants.

Kevin Karpinski (Daniel Karp, Michelle L. Seidleck and Allen, Johnson, Alexander & Karp, on the brief), Baltimore, for appellees.

Argued before WENNER,* SONNER and ADKINS, JJ.

ADKINS, Judge.

Like a chameleon, the common legal term "malice" must be examined in context. As the Court of Appeals recently observed in an analogous case involving qualified public official immunity, "[t]he word 'malice' has been a troublesome one in the law, because it has been used in many different contexts...." *Shoemaker v. Smith*, 353 Md. 143, 161, 725 A.2d 549 (1999). This wrongful arrest case is additional anecdotal affirmation of that troublesome nature.

We must resolve a series of "malice" related issues in this appeal from summary judgment in favor of appellees, who are eight municipal defendants. Because the Circuit Court for Prince George's County concluded that there was insufficient evidence of malice to defeat the presumption of qualified immunity afforded to municipal officials under Md.Code (1974, 1998 Repl.Vol.), § 5–507 of the Courts & Judicial Proceedings Article ("Section 5–507"),[1] we will address the qualified immunity issue first. In doing so, we also must consider the effects of an order by Judge Alexander Williams of the United States District Court for the District of Maryland, dismissing with

---

* Wenner, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. Section 5–507 provides:

An official of a municipal corporation, while acting in a discretionary capacity, **without malice,** and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Section 5–507(b)(1) (emphasis added). This section is identical to former section 5–321, its predecessor before the governmental immunities subtitle was recodified in 1997. *See* 1997 Md.Laws, Chap. 14, § 9.

prejudice the federal civil rights claim of Robert Thacker, appellant. We shall hold that (1) the federal court's decision had no preclusive effect on the remanded state law claims now before us; (2) there was sufficient evidence to raise an inference of malice against the arresting officer; (3) the city employing the arresting officer may be held vicariously liable for his torts and constitutional violations, and is not otherwise immune from liability for violations of the Maryland Constitution; and (4) there was no evidence of malice against the other six municipal defendants.

As a result, we must review the undisputed material facts to determine whether summary judgment was appropriate even absent such qualified immunity. Each cause of action must be considered separately, because the respective *prima facie* elements and defenses differ. We shall affirm in part, reverse in part, and remand to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND OF LEGAL PROCEEDINGS

### The Arrest And Complaint

Thacker's arrest for disorderly conduct precipitated the instant case. Thacker, an apartment complex manager, requested police assistance in removing from the property management office a tenant who was disgruntled over Thacker's refusal to issue him a temporary parking permit. In the ensuing encounter among Thacker, Hyattsville police officers, and the tenant, Officer Gary Blakes arrested Thacker. Additional evidence regarding that encounter and arrest is reviewed in Part III of this opinion.

After the disorderly conduct charge was *nolle prossed*, Thacker and Melvin Berman, as general partner of the partnership that employed Thacker, filed a complaint against Blakes and seven other municipal defendants.[2] The gravamen of the complaint was that Thacker did not commit any crime,

---

2. The defendants, appellees herein, are the City of Hyattsville; Hyattsville Mayor Mary Prangley; the City Council of the City of Hyattsville; Hyattsville Police Chief Robert T. Perry; Cpl. Gary Blakes; Cpl. Grego-

that Blakes made defamatory statements regarding Thacker, and that the arrest was wrongfully motivated by Blakes' dislike of Thacker and his desire to retaliate, intimidate, humiliate, and harm him. The other municipal defendants were alleged to be liable under theories of vicarious liability, negligent training, and/or negligent supervision.[3]

## Federal Court Proceedings

The municipal defendants removed the entire case to the United States District Court for the District of Maryland, based upon a single civil rights count under 42 U.S.C. section 1983 (the "section 1983 claim").[4] They immediately filed a preliminary motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). No discovery had been conducted. Plaintiffs filed an opposition, attaching a copy of Blakes' incident report to it.

At the motion hearing, without prior notice to Thacker's attorney, defense counsel urged the court to exercise its

---

ry Phillips, who was at the arrest scene; Pvt. Limuel Hunter, also present for the arrest; and Sgt. Wayne McCully, a duty officer who was not at the scene. For clarity, we shall refer to the appellants and appellees collectively by their respective roles of plaintiffs and defendants in the trial courts.

**3.** The complaint included these counts on behalf of Thacker:

| | |
|---|---|
| Count I: | Defamation |
| Count II: | Assault and Battery |
| Count III: | False Arrest |
| Count IV: | False Imprisonment |
| Count V: | Malicious Prosecution |
| Count VI: | Violation of Civil Rights under 42 U.S.C. Section 1983 |
| Count VII: | Violation of Maryland Declaration of Rights |
| Count VIII: | Intentional Infliction of Emotional Distress |

In addition, one count was asserted on behalf of both Thacker and appellant Melvin Berman, as general partner of the partnership that employed Thacker and owned the apartment complex:

| | |
|---|---|
| Count IX: | Interference with Contract |

**4.** 42 U.S.C. § 1983 imposes civil liability on anyone "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ., subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

discretion under Rule 12(b) to convert the motion to dismiss into a motion for summary judgment.

[DEFENSE COUNSEL]: I do note that while the complaint itself is fairly limited in factual allegations, the plaintiff has attached a copy of the police report to his reply memorandum, thereby, I submit, making the police report itself in essence part of his complaint. I think it's therefore fair to refer to that complaint.

THE COURT: Are you now turning this into a motion for summary judgment?

[DEFENSE COUNSEL]: It is in practical effect a motion for summary judgment based upon the additional material supplied by the plaintiff, not the defendant, to the record.

THE COURT: Does [plaintiffs' counsel] have the right to receive notice of this and an opportunity to supplement his response? What is your view on that?

[DEFENSE COUNSEL]: I would respectfully submit that the defendant is under no obligation to warn the plaintiff that by adding additional information he risks converting what is a motion to dismiss to a motion for summary judgment. My position would perhaps have been clearer had I submitted affidavits from my clients, but, frankly, I didn't think it necessary.

Thacker's attorney objected that he was not prepared for a dispositive evidentiary motion, and that the police report was neither proffered nor admissible for the truth of Officer Blakes' statements therein.

[PLAINTIFF'S COUNSEL]: Initially, I must state that I was prepared today to argue the motion to dismiss and not a motion for summary judgment. And it is very clear from my pleading that the purpose of attaching the police officer's report was only for the purpose of showing his state of mind, if you would, for purposes of arrest. We certainly do not admit the facts that are alleged in that report and I make that clear when I attached that to my pleading by a statement to that effect. We certainly dispute those facts. Our position here is that we are not here to try this case.

We are here on an issue of whether or not we have sufficiently pled facts from which a jury can reasonably infer that these violations have occurred.

Without further comment on converting the motion to dismiss, the federal court proceeded to raise the issue of qualified immunity.

THE COURT: Well, what is the purpose of having submitted a copy of the complaint and your interpretation of that? What was the purpose of that?

[PLAINTIFF'S COUNSEL]: To show that the officer thought that it was his responsibility to resolve the parking problem, and he thought that it was within his parameters to arrest Mr. Thacker, the plaintiff, by virtue of the fact that he would not stop asking him to remove the tenant from his office.

THE COURT: It just seems to me that it's a built-in qualified immunity defense. It doesn't matter whether in fact he had probable cause, but if he reasonably and objectively believed that he had the right to arrest him for disorderly conduct, I think the game is over. That's what qualified immunity is.

[PLAINTIFF'S COUNSEL]: Well, I would think, Your Honor, that whether or not it was reasonable for him to believe such is the jury question.... [M]y point is that the justification for the arrest is what compromises the whole claim. If there are sufficient facts from which the jury can determine, which I believe there is, that the officer was not reasonable in thinking that he could make the arrest and that his arrest was not justified, which we claim that it is not justified, then there falls the probable cause argument.

After noting that "we have not even developed any of the facts in this case," Thacker's attorney proffered his client's anticipated testimony that (a) as he and the tenant were leaving, Officer Blakes yelled that Thacker was a bad manager, and (b) Thacker responded by yelling out the door that "If I'm a bad manager, you're a bad police officer."

Without further proffer, argument, or ruling, the federal court granted defendants' motion to dismiss the section 1983 claim. In accordance with his "clear and consistent" practice of declining to exercise supplementary jurisdiction over pendent state law claims, Judge Williams remanded the remaining state law claims without addressing the effect his ruling would have on those remanded claims:

Well, I'm going to tell you what I'm going to do, counsel. I'm going to allow you to go back to state court. I'm going to remand this case back to the state court. Why? Because I don't believe that you have and can establish, based on the pleadings itself, a 1983 action. . . . But based on the document that you submitted, based on my reading of the facts, and based on what confronts me and leaps out at me right now, I believe that all over this case is qualified immunity. . . . Based on the facts I see and what is so clear to me as a matter of law, I find that the officers had a bas[i]s to arrest. They had probable cause, and even if they didn't have probable cause, they objectively and reasonably believed they had the right to arrest, which, as I see it, that's qualified immunity.

The Fourth Circuit has told these district court judges to assess qualified immunity as early as we can. I have done that. I have given you a chance to talk me out of it. . . . I'm dismissing [the 1983 claim] with prejudice. And having reviewed the complaint that you have submitted, I also believe that as an alternative ground summary judgment should be awarded.

I'm going to remand Counts I, II, III, IV, V, and VII [and IX] to the state court for your continued litigation. I will not offer an opinion at all on those counts. I will leave those for you to fight in the state system. . . . I will remand the case back to state court, again, having ruled on only the one claim. So, your complaint is still viable, counsel, and you may continue your suit back in . . . Prince George's County.

In a subsequent written order, the federal court granted the motion to dismiss the section 1983 count with prejudice,

denied the motion with respect to the pendent claims, remanded the case to the circuit court, and ordered the case closed. The reasons stated in that order are as follows:

> For the reasons stated on the record [at the motion hearing], a reading of the complaint indicates that the three individual officers are entitled to qualified immunity, and that no federal claims lie against the other Defendants. Therefore, Count VI must be dismissed under Fed.R.Civ. Pro, 12(b)(6).
>
> Moreover, in light of the report submitted by Plaintiffs themselves, and having heard a proffer of facts offered by Plaintiffs' counsel at the hearing, the Court also concludes that the motion could be converted to one for summary judgment. Upon reviewing Plaintiffs' additional evidence and counsel's proffer, the Court also concludes that the Defendants would be entitled to summary judgment.

Plaintiffs did not appeal the order.

### Circuit Court Proceedings After Remand

After remand, defendants immediately attempted to use Judge Williams' order to dispose of all the state law claims. They moved to dismiss, or in the alternative for summary judgment, on the grounds that the federal court had granted summary judgment based upon factual findings of probable cause, lack of malice, and qualified immunity under federal law, and that the federal court's decision collaterally estopped Thacker from disputing that they were entitled to qualified immunity under Maryland law. Alternatively, they argued that the federal court made a factual finding of probable cause that necessarily vitiated the assault and battery, false arrest, false imprisonment, malicious prosecution, and Maryland Declaration of Rights claims, because each of those causes of action requires a showing of lack of probable cause.

The circuit court denied the motion after hearing. In doing so, the court raised questions about the extent and impact of the federal court's order:

The problem is he kind of went back and forth about the reason why he was dismissing a Federal claim. . . .

Now, the question is, what did he do when he decided the 1983 case. If he made a determination as a fact finder that there was-there was nòt sufficient evidence to support the claim. That is not really what a Motion to Dismiss is.

A Motion to Dismiss is supposed to be based solely on the pleadings, and if he did it on the basis of the pleadings alone, then I don't think he's made a finding about good faith or anything else. I don't know how he made this determination.

Rejecting defense counsel's argument that the narrative preceding the order of dismissal established that Judge Williams had made conclusive factual findings of probable cause and lack of malice, the circuit court also questioned the basis of the federal court order: "Just on the basis of the report he did that? The report is clearly self-serving. How can you do that?" The circuit court declined to give the federal order any preclusive effect, and denied defendants' motion.

After conducting substantial discovery, defendants filed a second motion for summary judgment, accompanied by deposition transcripts and the same federal order and transcript. They renewed their collateral estoppel arguments, and also sought judgment based on the evidence developed in discovery, or the lack thereof. They asserted that such evidence established that none of the officers at the scene had acted with malice, and that defendants were otherwise entitled to summary judgment on each of the various counts. Plaintiffs opposed the motion.

At the motion hearing, the circuit court quickly disposed of the preclusion arguments:

. . . [Y]ou all have raised res judicata. And that is not, and I have already said, I don't see that as the primary issue here. That is only as to Count 6 on the federal claim.

The court then ruled on each of the remanded state law claims *in seriatim:*

Count I (defamation): summary judgment granted as to all defendants;

Counts II (assault and battery), III (false arrest), IV (false imprisonment), and V (malicious prosecution): summary judgment granted as to all defendants except Blakes (taken under advisement);

Count VII (Md. Declaration of Rights): taken under advisement as to all defendants; and

Count IX (interference with contract): summary judgment granted as to all defendants.

After post-hearing briefing, the court issued a written opinion and order granting summary judgment for Blakes and the other municipal defendants on all of the counts taken under advisement. The court based its decision on its conclusion that there was insufficient evidence of malice to overcome the presumption of qualified immunity. Final judgment was entered on all counts in favor of all defendants. This appeal followed.

## DISCUSSION

### I.

### Standard Of Review

Once again, we shall follow familiar principles governing appellate review of summary judgment. Summary judgment is appropriate when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501. Our review of the grant of summary judgment requires us to determine whether a dispute of material fact exists, and whether the trial court was "legally correct." *Hartford Ins. Co. v. Manor Inn of Bethesda,* 335 Md. 135, 144, 642 A.2d 219 (1994). Facts necessary to the determination of a motion may be placed before the court by pleadings, affidavit, deposition, answers to interrogatories, admissions of facts, stipulations, and concessions. *See Wood v. Palmer Ford,* 47 Md.App. 692, 694, 425 A.2d 671 (1981). We will review the "same information from the record and

decide the same issues of law as the trial 'court." *Heat & Power Corp. v. Air Prods. & Chems.*, 320 Md. 584, 591–92, 578 A.2d 1202 (1990).

■ In doing so, we are mindful of important limitations on the court's role.

> In resolving whether a material fact remains in dispute, the court must accord great deference to the party opposing summary judgment. Even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the trial court is obliged to make the inference in favor of the party opposing summary judgment. The court should never attempt to resolve issues of fact or of credibility of witnesses—these matters must be left for the jury.

*Laws v. Thompson*, 78 Md.App. 665, 674, 554 A.2d 1264, *cert. denied*, 316 Md. 428, 559 A.2d 791 (1989) (citation omitted). For these reasons, certain types of claims are usually inappropriate for summary judgment. The Court of Appeals recently reminded us that

> [s]ummary judgment generally is inappropriate when matters—such as knowledge, intent or motive—that are ordinarily reserved for the fact-finder are essential elements of the plaintiff's case or of the defense[,] .... [because] 'the facts concerning the defendant's knowledge and conduct, and the circumstances in which they existed, as well as any determinations of how they relate to the legal standard ... are best left for resolution by the trier of fact at trial.'

*Brown v. Dermer*, 357 Md. 344, 355–56, 744 A.2d 47 (2000) (quoting *Fed. Sav. & Loan Ins. Corp. v. Williams*, 599 F.Supp. 1184, 1213 (D.Md.1984)). Whether a municipal official is entitled to qualified immunity because the discretionary act complained of was performed "without malice" raises the type of intent and state of mind issues that are less likely to be resolved on summary judgment. *See Shoemaker*, 353 Md. at 168, 725 A.2d 549.

## II.

## Propriety Of Summary Judgment On
## Grounds Of Qualified Immunity

The circuit court held that all of the defendants were entitled to qualified immunity under section 5–507, because there was "an absence of evidence" that Blakes, the arresting officer, acted with malice in making the decision to arrest Thacker. We disagree. For the reasons set forth below, we shall reverse in part, affirm in part, and remand the case for further proceedings consistent with this opinion.

### A.

### Effect Of Federal Court Order Dismissing
### The Section 1983 Claim

As a threshold question, we must decide whether the federal court's dismissal of the section 1983 claim had any preclusive effect on the remanded state law claims. The specific question raised by defendants involves collateral estoppel—or to use the more descriptive term, "issue preclusion." [5]

Defendants contend that in disposing of the section 1983 claim, the federal court made factual findings of probable cause, lack of malice, and qualified immunity under federal law, and that, as a matter of law, such findings establish lack of malice and qualified immunity under section 5–507. Alternatively, they argue that the federal court's finding of proba-

---

**5.** Defendants do not appear to contend that the federal court's decision precluded plaintiffs from pursuing their state law claims. As a general rule, when a federal court dismisses federal claims on the merits before trial, and then declines to exercise its supplemental jurisdiction over related pendent state claims that were removed along with the federal claims, principles of *res judicata* or claim preclusion do not bar litigation of the remanded state claims in state court. *See Durham v. Fields,* 87 Md.App. 1, 12, 588 A.2d 352, *cert. denied,* 323 Md. 308, 593 A.2d 668 (1991) ("The law seems clear that 'a refusal to exercise pendent jurisdiction over a state claim following a pretrial dismissal of a federal claim does not bar litigation of state claims in the state court' ") (citation omitted).

ble cause makes it impossible to establish or defend the state law claims for assault and battery, false arrest, false imprisonment, malicious prosecution, and violation of the Maryland Declaration of Rights.

■ Defendants correctly point out that when a federal court disposes of a federal claim before trial, collateral estoppel may preclude the plaintiff from relitigating factual issues actually decided by the federal court. "Federal law determines the preclusive effect of federal orders on a question of federal law, regardless of whether the court applying the federal judgment is state or federal." *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321 (4th Cir.1993). The Fourth Circuit has explained that

'[c]ollateral estoppel or issue preclusion is premised on the notion that a judgment in a prior suit "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." ' *United States v. Wight,* 819 F.2d 485, 487 (4th Cir.1987) (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5 [58 L.Ed.2d 552] (1979)). Once a court decides an issue of law or fact necessary to its judgment, that decision can be binding upon a party to it if the party was given a " 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15 [66 L.Ed.2d ⁀8] (1980) (citations omitted)).

*Fullerton Aircraft Sales & Rentals v. Beech Aircraft Corp.,* 842 F.2d 717, 720 (4th Cir.1988).

■ The "elements" of collateral estoppel reflect this fundamental concern for fairness.

For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against

whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. *Sedlack v. Braswell Svcs. Group,* 134 F.3d 219, 224 (4th Cir.1998). In this case, these elements have not been satisfied.

First, the issue considered by the federal court was not "identical" to the qualified immunity issue addressed by the circuit court. In *Shoemaker, supra,* the Court of Appeals recently held that Maryland law governing qualified immunity from state law claims is not "identical" to federal law governing qualified immunity from section 1983 claims. This difference arises from fundamental differences in the history, objectives, underlying policies, and standards governing qualified immunity.

The [Supreme] Court found, from experience that the subjective component exacted too high a price by forcing government officials, in too many instances, to devote time and energy in defending non-meritorious litigation, diverting their attention from their official duties.... [T]he Court noted that 'the judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions,' and that those variables 'explain in part why questions of subjective intent so rarely can be decided by summary judgment.' *Harlow v. Fitzgerald,* [457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)]. The subjective element of good faith, or lack of malice, was thus incompatible with the desire that insubstantial claims should not proceed to trial.... Accordingly, the Court eliminated that element from the calculus and re-articulated the remaining objective element. The new standard for immunity under § 1983 was stated thusly: 'government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'.... The good and evil intentions of the official play no direct role in this analysis.

*Id.* at 159, 725 A.2d 549. The *Shoemaker* Court then contrasted the objective federal standard for qualified immunity with Maryland's subjective, malice-based standard.

> That is not the test for determining the qualified immunity under the State Tort Claims Act, however. Unlike the judicially-fashioned purely objective tests for immunity under § 1983, the General Assembly has made clear that State personnel do *not* enjoy immunity under § 5–522(b) if they act with malice.... [T]he Supreme Court has clearly and expressly eliminated malice, which it regarded as the embodiment of subjectivity, from the immunity doctrine. In enacting the State Tort Claims Act, the General Assembly just as clearly and expressly retained the subjective element for immunity purposes. In doing so, it has provided a greater separation between substantive liability and immunity and simply struck a different balance. The Legislature has decided that, when State personnel act maliciously, they ... must bear the risk. The predominant and laudable public policy is to discourage State personnel from acting with malice in the performance of their public duties.

*Id.* at 160–61, 725 A.2d 549. Based on such differences, the *Shoemaker* Court concluded that a federal court decision based on qualified immunity under federal law is not entitled to any preclusive effect in subsequent state court proceedings involving qualified immunity under the Maryland Tort Claims Act.[6] *Id.* at 162, 725 A.2d 549.

We see no reason why *Shoemaker's* distinctions and conclusions would not be equally applicable in a case involving qualified immunity for municipal officials under section 5–507. Indeed, the *Shoemaker* Court explicitly relied upon section 5–507 cases, including, *inter alia,* this Court's decision in *Davis v. DiPino,* 99 Md.App. 282, 637 A.2d 475 (1994), *rev'd on other grounds,* 337 Md. 642, 655 A.2d 401 (1995). In *Davis,* we

---

6. The qualified immunity provisions of the Maryland Tort Claims Act are codified at Md.Code (1984, 1999 Repl.Vol.), § 12–105 of the State Government Article; and Md.Code (1974, 1998 Repl.Vol.), § 5–522 of the Courts and Judicial Proceedings Article.

distinguished the meaning of "malice" in the context of public official immunity under section 1983 from the meaning of "malice" in the context of municipal official immunity under section 5–507. *Id.* at 290, 637 A.2d 475.

Because Judge Williams clearly applied the objective federal standard for qualified immunity, we hold that his decision that the defendants were entitled to qualified immunity from section 1983 liability did not collaterally estop plaintiffs from litigating whether defendants were entitled to qualified immunity from liability under Maryland tort law.

But defendants have a second issue preclusion arrow in their quiver. They also urge us to give preclusive effect to the federal court's statements regarding probable cause. After carefully reviewing the record, however, we conclude that the issue of probable cause to arrest was not "actually determined" as a "critical and necessary part" of the federal court's decision to dismiss, and even if it had been, plaintiffs did not have a "full and fair opportunity to litigate the issue" in federal court. We explain.

The federal court's order is one of dismissal, and is specifically predicated upon the allegations of the complaint:

For the reasons stated on the record [at the motion hearing], **a reading of the complaint indicates that the three individual officers are entitled to qualified immunity,** and that no federal claims lie against the other Defendants. Therefore, **Count VI [under Section 1983] must be dismissed under Fed.R.Civ.Pro. 12(b)(6).** (Emphasis added.)

Understandably, defendants prefer to construe the federal court's decision as a summary judgment predicated upon conclusive factual findings favorable to their cause. Indeed, defendants did urge the court to convert their motion to dismiss [7] to a motion for summary judgment, and the federal

---

7. Defendants' federal motion to dismiss and plaintiffs' opposition are not in the record before us, so we cannot discern whether and to what extent the issues of probable cause, malice, and qualified immunity were discussed as grounds for the requested dismissal.

court stated in its order that it "could" convert the motion, and that if it did so, defendants "would be" entitled to summary judgment based on the police report and proffer of Thacker's testimony. Notwithstanding the effect that statement may have had on the parties' evaluations of their respective positions in this case, we conclude that such hypothetical language is not the "fatal weapon" that defendants wish it to be.

We specifically reject defendants' contention that the federal court converted the motion to dismiss into a motion for summary judgment. There are well established guidelines for such conversions.

Under Rule 12(b) of the Federal Rules of Civil Procedure, when matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .' In interpreting the requirements of this rule, this court has held that the term 'reasonable opportunity' requires that all parties be given " 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery."

*Gay v. Wall*, 761 F.2d 175, 177 (4th Cir.1985) (citations omitted).

Defendants contend that the alleged conversion occurred "inadvertently," as a result of plaintiffs' submission of the police report with his opposition to the motion, albeit for expressly limited purposes. Such an "inadvertent" or "unilateral" conversion is not possible, because Rule 12(b)

does not provide that a motion to dismiss supported by materials outside the pleadings shall be treated as one for summary judgment when 'filed' with the court or when 'served' on a party. Rather, the rule expressly states that a motion to dismiss supported by such materials 'shall be treated' as a summary judgment motion only when the

materials 'are presented to and not excluded by the district court.'

*Finley Lines Joint Protective Bd. v. Norfolk Southern Corp.*, 109 F.3d 993, 995 (4th Cir.1997). Only the district court can "effectively exclude" such materials, and may do so by refusing to consider them in ruling on the motion. *Id.* at 996. In this case, it is clear from the express language of the order that the court did not consider the police report in ruling on the motion to dismiss. Thus, the court effectively excluded the report by failing to consider it.

We also note that defendants' construction of the order, as a summary judgment on a converted motion to dismiss, would require us to conclude, which we do not, that Judge Williams abused his discretion, in violation of clear federal standards governing such conversions.

[N]otification that a Rule 12(b)(6) motion may be converted is only one of the requirements of Rule 12. Once notified, a party must be afforded a 'reasonable opportunity for discovery' before a Rule 12(b)(6) motion may be converted and summary judgment granted.

*Gay*, 761 F.2d at 177. In *Gay*, the Fourth Circuit held that conversion of a motion "when the plaintiff had barely begun discovery" was a clear abuse of discretion. *Id.* We find it significant that the plaintiff in *Gay* had far more notice of the contemplated conversion, more opportunity for discovery, and more opportunity to file a substantive evidentiary opposition to summary judgment than the plaintiffs in this case had for the brief time that they were in federal court.

Accordingly, defendants' reliance on the paragraph of the order regarding summary judgment is misplaced. Reading the order as a whole, we conclude that the court recognized that conversion would be inappropriate at the preliminary stage of the case, but included the summary judgment language in the order as dictum providing an "early evaluation" of the case in accordance with the recommendations of the Fourth Circuit. By ordering dismissal on the complaint, expressly preserving plaintiffs' right to litigate the pendent

state claims in circuit court, and using conditional language to signal that the case might be amenable to summary judgment, it appears that Judge Williams stayed within the confines of the motion to dismiss, while simultaneously providing such a nonbinding evaluation.

For these reasons, we conclude that the order reflects the federal court's considered decision not to convert the motion, and not to make any conclusive findings of fact with respect to what the evidence might be expected to show if the motion were converted to a motion for summary judgment. Thus, we cannot say that the court's decision and or its statements regarding probable cause constitute "actually determined" "findings of fact" that were "essential" to the court's decision to dismiss. Nor could we say in the circumstances of this case that "the party against whom estoppel is asserted . . . had a full and fair opportunity to litigate the issue in the previous forum." *Sedlack*, 134 F.3d at 224.

For all of these reasons, we hold that the circuit court properly declined to give the federal court's decision or statements regarding probable cause any preclusive effect. As a result, we must proceed to consider whether the circuit court erred in concluding that the defendants were entitled to qualified immunity.

## B.

### Propriety Of Circuit Court Judgment On Qualified Immunity Grounds

There is no dispute that all of the municipal defendants were public officials acting in their respective discretionary capacities, and that under section 5–507, they are immune from civil liability for their discretionary actions in the absence of malice. *See City of District Heights v. Denny*, 123 Md.App. 508, 516, 719 A.2d 998 (1998). The sole issue is whether the circuit court erred in concluding that there was no genuine dispute of material fact as to whether Officer Blakes and the other municipal defendants acted with malice in arresting Thacker.

1.

## Evidence Regarding The Arrest

Our *de novo* review of summary judgment requires us to examine the evidence regarding the encounter between Thacker and Blakes. The record shows that Thacker is the property manager of Ager Road Station Apartments ("Ager Road") in Hyattsville, Maryland. Thacker is white. A majority of Ager Road tenants are Latino or African–American.

On January 17, 1997, a dispute arose between Thacker and Gerald Grimes, an African–American resident of Ager Road, when Thacker refused Grimes' request for a temporary parking permit. At approximately 5:45 p.m., after Grimes refused to leave the property manager's office, Thacker instructed Lorraine Battle, the resident manager working in the office, to call the Hyattsville Police Department.

Officers Gary Blakes, Gregory Phillips, and Limuel Hunter responded to the call. Thacker testified that he advised Blakes that he wanted Grimes to leave the office. According to Thacker, the following ensued:

Officer Blakes also talked to [Grimes]. I listened for a little while and then I . . . said I really need to go. I told him I need to close the office and I told him I had to go somewhere. . . . And Officer Blakes got a little upset because of the fact that I wouldn't give [Grimes] a parking permit. He tried to talk me into giving [Grimes] a parking permit and I explained to him why I couldn't give [Grimes] a parking permit. . . . And Officer Blakes waved his hands in front of me and said we're not getting anywhere . . . and that I was a bad manager and . . . he looked at Mr. Grimes and said, 'We know why he won't give you a parking permit.' And I asked him to leave because he was being belligerent to me. He was saying I was a bad manager and him and Mr. Grimes walked out. I believe his arm was around Mr. Grimes' shoulder, telling him that I was a bad manager and going out of the office bad-mouthing me. . . .

At this point, I'm still behind the counter when the[y] went out of the office and I went to the door and I opened

the door and I said, 'If I'm a bad manager, then you're a bad police officer.' At that time, he turned around and he said if I said one more word, that he was going to arrest me. And I told him that if I've done something to be arrested for, then to arrest me. And he came towards me and arrested me.

Thacker also testified that he felt pressured from the time he started working at Ager Road a year and a half earlier to hire and pay for off-duty uniformed police officer to provide more patrols of the complex, but that he had objected, and refused to do so.

I had talked to police officers about patrolling more of the property more often ..., and they'd always send another sergeant or lieutenant in that is in charge of the paid officers. That's where I had my biggest problem, because I was asking for protection for my property ... and I was being asked to pay for that service and I didn't believe in extortion. That's, what I thought it was. It was extortion.

Although Thacker never hired any off-duty officers, when he was away for two weeks, the owner who was covering for him "had to have the police there ... and hired the police for extra protection."

Ms. Battle stated in her affidavit [8] that Thacker was "not out of control," and raised his voice only in response to Officer Blakes' comments. Thacker did not yell, scream, curse, or use profanity. She further stated that Thacker never went any farther outside than the front steps of the office. After she heard Blakes tell Thacker that he was under arrest, she went to the door and saw Blakes handcuffing Thacker at the front steps.

Officer Blakes testified that he had responded to calls from Thacker on previous occasions. Although he had no prior conflicts with Thacker, Blakes testified that based on his past experiences with Thacker, he

---

8. Ms. Battle's affidavit was submitted to the court with Thacker's post-hearing memorandum.

thought that Mr. Thacker was unfair to his tenants.... [H]e's not allowed his tenants to speak, his harshness with them.... We deal with a lot of resident managers with complexes the size of Mr. Thacker's, larger, smaller, and nowhere in my—at that time it would be eight years of law enforcement I have ever seen a resident manager talk, treat his tenants the way Mr. Thacker does.

Blakes admitted calling Thacker a "bad manager" during the incident preceding the arrest, but testified that the comment reflected his past experiences in dealing with Thacker rather than this particular experience in dealing with the dispute between Thacker and Grimes.

Officer Blakes' recollection of the events that evening differs from Thacker's. Blakes testified that, upon learning that Grimes was a tenant, he advised Grimes that he would have to leave the office. Blakes further testified that Thacker followed Grimes and him outside, where the following occurred:

[Thacker] was screaming at me going ... you got to learn how to do your damm job. At which time I turned around to Mr. Thacker and told him he needs to quiet down or he will go back inside his office, as we continue walking out towards the cruiser.

We then got out on the public sidewalk and we stepped down on the curb. Mr. Thacker continued walking on the sidewalk towards us, steadily screaming at us....

The lady identified as Miss Battle had also came outside and she was standing on the two steps that leads up to the sidewalk. And as I looked at Mr. Thacker I could also see an elderly female in the apartment above the rental office with her hands folded, her head leaning and just looking at us.

I told [Thacker] a second time that we did what you said, we left the office, at this time you need to quiet down or go back inside your office or you're going to be subject to arrest. At which time he replied this is my damned property, there's not a damned thing you can do to me.

The whole time this is going on we're steady walking back towards the back-up cruisers that were parked in the street. I had then got to the back of my cruiser. Mr. Thacker continued proceeding towards us and I said this is your last warning, if you do not calm down and go back into your office, you will be locked up. And he said you can't do a damned thing to me.

At which time I instructed Mr. Thacker that he was under arrest.

Blakes placed Thacker against a wall, handcuffed him, and instructed Officer Hunter to transport him to the police station. Blakes alone made the decision to arrest and charge Thacker with disorderly conduct.

Phillips and Hunter did not participate in the conversations with Thacker, or the decision to arrest and charge Thacker. Both signed the incident report prepared by Blakes. Sgt. McCully's only involvement was to sign Blakes' report as a designated supervisor.

Officer Blakes stated that Thacker had created a public disturbance through "[h]is loud voice, his profanity had already made one tenant come to the window and almost had an audience.[9] He also prevented us from even beginning to complete or answer the questions, the additional questions that Mr. Grimes had."

Tenant Grimes testified that he had difficulty talking to Blakes because Thacker kept interrupting. When Thacker asked Blakes and Grimes to leave, they did so. Grimes testified that he did not hear Blakes say that Thacker was a bad property manager. He testified that Thacker's demeanor was "very belligerent" and "very abusive." When Grimes and Blakes left the office, Thacker followed them down the sidewalk, and "continued the [verbal] abuse" and profanity.

---

9. The resident was not interviewed by the police. She died without giving an admissible statement.

Well, we were walking out of the office ... [W]e were still on the property, not on the street, by the sidewalk.... He was right behind us and kept saying ... just get out....

And as Sergeant Blakes said, look, you don't have to address me like that. You don't have to speak to me like that. I respected you. I heard what you have to say. And [Thacker] said I don't care about you .... and he was being very abusive.

.... And Sergeant Blakes said, look, sir, if you continue like that I'm going to arrest you. And [Thacker] said you can't arrest me ... and that was it. Then [Blakes] arrested him.

Grimes also testified that Ms. Battle never came out of the office.

### 2.

### Qualified Immunity Claim Of Officer Blakes

Appellant Thacker argues that the circuit court erred in granting summary judgment in favor of arresting officer Blakes on the basis of qualified immunity, because there is sufficient evidence from which a jury might infer that Blakes acted with malice in making the decision to arrest Thacker. We agree, and explain our evidentiary reasons.

This Court has recognized that granting police officers qualified immunity is necessary "to permit police officers ... to make the appropriate decisions in an atmosphere of great uncertainty. The theory is that holding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement." *Williams v. Prince George's Co.*, 112 Md.App. 526, 543, 685 A.2d 884 (1996). "Unquestionably, the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts." *Id.* at 550, 685 A.2d 884.

For these reasons, the General Assembly created qualified immunity as a "safe harbor" for certain governmental acts. Section 5–507 establishes limited immunity for municipal officials, including police officers, for discretionary acts

committed without malice. In the qualified immunity context, the Court of Appeals recently affirmed that "malice" has an "actual malice" meaning, and requires a determination of whether the arresting officer's "conduct, given all of the existing and antecedent circumstances, was motivated by ill will, [or] by an improper motive.... [T]hat motive or animus may exist even when the conduct is objectively reasonable." *Shoemaker*, 353 Md. at 164, 725 A.2d 549. Malice can be established by proof that the officer " 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.' " *Id.* at 163, 725 A.2d 549 (quoting *Leese v. Baltimore County*, 64 Md.App. 442, 480, 497 A.2d 159 (1985), *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985)).

In a wrongful arrest case, the arrestee has the burden of pleading and proving that the arresting officer acted with malice. *See Davis*, 99 Md.App. at 290–91, 637 A.2d 475. On a motion for summary judgment, inferences arising from the evidence presented by an arrestee challenging a claim of qualified immunity must be drawn in favor of the arrestee, and against summary judgment. *See Okwa v. Harper*, 360 Md. 161, 172, 757 A.2d 118 (2000).

Because the question of "malice" turns on the arresting officer's motive and intent, we are mindful of oft-repeated admonitions against resolution of such issues on summary judgment. Indeed, in three recent decisions, the Court of Appeals reversed summary judgments in cases involving "intent" and "credibility" issues. *See Brown*, 357 Md. at 367–68, 744 A.2d 47 (reversing summary judgment on basis of dispute as to whether landlord had notice of flaking, loose, or peeling lead paint, and as to whether reasonably prudent landlord would have investigated and corrected condition); *Pittman v. Atlantic Realty Co.*, 359 Md. 513, 535, 754 A.2d 1030 (2000) (reversing summary judgment granted after trial court improperly excluded plaintiff's affidavit contradicting prior deposition testimony, because court may not resolve credibility

issue raised by that affidavit); *Okwa, supra,* 360 Md. at 174, 757 A.2d 118 (reversing summary judgment granted on qualified immunity grounds, because court improperly made credibility assessment based on arresting officers' version of disputed events surrounding arrest). Specifically, the Court of Appeals has recognized that claims of qualified public official immunity usually present questions for the fact-finder.

When a trial court, faced with a motion for summary judgment laden with disputes of material fact bearing on issues of malice ... resolves those disputes in favor of the plaintiff and denies the motion, the State qualified immunity issue is ordinarily not conclusively resolved. In reviewing the evidence against the appropriate standard of proof, rather than in a light most favorable to the plaintiff, the court may reach a very different conclusion. Because the determination of malice, in particular, involves findings as to the defendant's intent and state of mind, there is much less likelihood of it presenting an 'abstract issue of law.'

*Shoemaker,* 353 Md. at 168, 725 A.2d 549.

But plaintiffs may not rely upon the mere existence of such an intent, motive, or state of mind issue to defeat summary judgment. Because a defendant's subjective intent is an element of the plaintiff's claim, the plaintiff must point to specific evidence that raises an inference that the defendant's actions were improperly motivated in order to defeat the motion. That evidence must be sufficient to support a reasonable inference of ill will or improper motive. *See Clea v. City of Balt.,* 312 Md. 662, 677–78, 541 A.2d 1303 (1988); *Lovelace v. Anderson,* 126 Md.App. 667, 693, 730 A.2d 774, *cert. granted,* 355 Md. 610, 735 A.2d 1105 (1999).

The Court of Appeals' most recent qualified immunity decision is instructively analogous to the case at bar. In *Okwa, supra,* the disputed arrest occurred after an airline ticket agent refused to accept Mr. Okwa's ticket for an international flight. When Okwa refused to leave the ticket counter, Maryland Transportation Authority officers arrived, and then ordered him to leave the airport terminal. Okwa refused, and a

verbal dispute arose. The officers arrested Okwa for disorderly conduct, and, based on his conduct after the arrest, also charged him with assault and resisting arrest. After a trial court acquitted him on all charges, Okwa filed a complaint against the arresting officers, alleging that his verbal protests did not constitute disorderly conduct, and that the arrest was motivated by the arresting officers' racial prejudice and an "extreme and overzealous desire to punish Mr. Okwa for failing to obey immediately their instructions to walk away from the ticket counter and exit the terminal." *Id.*, 360 Md. at 182, 757 A.2d 118. The trial court granted summary judgment in favor of the arresting officers.

The Court of Appeals reversed, finding that there were different versions of the events leading up to the arrest, including inconsistencies in the arresting officers' accounts. After reviewing the record, the *Okwa* Court held that the trial court's decision was predicated upon improper weighing of disputed evidence and inferences.

> Based on [the arresting officers'] version of the story, a fact finder, if given the opportunity, could conclude that [the arresting officers] acted without malice.... Apparently this is the version of events that the trial judge opted to believe. The trial judge necessarily determined [the arresting officers'] accounts of the altercation to be more credible and based his ruling on them. This was an error. The summary judgment process is not properly an opportunity for the trial court to give credence to certain facts and refuse to credit others.... Because disputed material facts exist in the record, or inferences of malicious conduct may be drawn from [the arrestee's] version of the facts, the [tort] counts were not amenable to disposition via summary judgment.

*Id.*

On occasion, this Court also has considered whether an arrestee's proffered evidence that a police officer acted with malice in making an arrest was sufficient to overcome a motion for summary judgment. In *Town of Port Deposit v. Petetit*, 113 Md.App. 401, 688 A.2d 54, *cert. denied*, 346 Md. 27,

694 A.2d 950 (1997), an off-duty police officer driving his own vehicle saw several people throw rocks at the plaintiff's vehicle and then saw the plaintiff's vehicle strike another person while driving away. The officer followed the plaintiff, who increased his speed. The officer subsequently fired several shots at the plaintiff's truck. When he stopped, the officer pointed his gun at the plaintiff and detained him. Based on these facts, we affirmed the trial court's decision to deny the officer's motion for summary judgment, because whether the officer acted with malice was a question for the jury. In doing so, we explained:

> From [the officer's] conduct, an inference can be drawn that he became enraged at what appeared to him to be grossly reckless conduct by [the arrestee], endangering others on the highway, and that he fired at [the arrestee] with the intention of injuring him.

*Id.* at 418, 688 A.2d 54.

We reached a similar result in *Nelson v. Kenny,* 121 Md. App. 482, 710 A.2d 345 (1998). In *Nelson,* a teacher intervened in a fight between two students. After interviewing the students and the teacher, a police officer placed the teacher under arrest. We held that several undisputed facts "could give rise to a reasonable inference of actual malice on [the police officer's] part." *Id.* at 494, 710 A.2d 345. Specifically, the record revealed that the arresting officer did not witness the altercation and "appeared to respond willingly to [one of the student's parents] demand that [the officer] arrest [the teacher]," even though that demand "was put in overtly racial terms that indicated animus on [the parent's] part." *Id.* We concluded:

> It would not be unreasonable for a fact-finder ... to interpret [the officer's] arguably eager compliance with [the parent's] racially motivated request to mean that she shared in her hostility and was acting out of racial animus and hatred herself. Furthermore, [the officer's] failure to interview Mrs. Thomas, who was identified by [the teacher] who in fact touched [the student] and who was known to [the officer], could be interpreted by a fact-finder to substantiate that her actions toward [the teacher] were motivated by

racial bias and hostility. Finally, [the officer's] conduct in standing guard outside the classroom door as [the teacher] retrieved her purse, escorting her to the police cruiser in front of her co-workers, handcuffing her in the parking lot before a group of spectators, and telling her that she would have a permanent criminal record when that was not the case could be construed by a fact-finder as calculated and designed to humiliate and embarrass [the teacher].

*Id.*

But, we also have recognized that summary judgment is proper when "there was not a scintilla of evidence that the arresting officers harbored ill will or an evil motive toward appellant." *Williams,* 112 Md.App. at 551, 685 A.2d 884. In *Williams,* the plaintiff's mother had previously reported her car stolen. At some point after the vehicle was recovered, the plaintiff was driving the vehicle when a police officer ran a check on the car and found that it was still reported stolen. The police officer stopped the plaintiff, pulled his gun, and ordered the plaintiff to put his hands in the air. When a backup officer arrived, one of the officers "put [plaintiff's] hands behind [his] back, and somebody put their knee in [his] back, and hold [sic][his] shoulder; they eased [him] down, they didn't rough [him] up, or anything" before handcuffing him. *Id.* at 535, 685 A.2d 884. Once the officer discovered that the vehicle was not stolen, he released the plaintiff and "gave [the plaintiff] his card; he said call me if you have any trouble." *Id.* at 535–36, 685 A.2d 884. In these circumstances, we held that there could be no inference that the officer acted with malice, because there was "no expression of hostility of the officers nor any physical harm inflicted, and indeed, the record reflects conciliation, accommodation, and even an apologetic attitude on the part of the arresting officer." *Id.* at 550–51, 685 A.2d 884.

To evaluate the propriety of summary judgment in this arrest case, we look first to the evidence cited by the circuit court in deciding that Officer Blakes was entitled to qualified immunity. In its memorandum opinion, the circuit court specifically rejected Thacker's argument that the evidence

raised an inference that Blakes had both a racial animus and a financial animus.[10] Our review of the same evidence leads us to a reach a different conclusion.

In support of his claim that there was a racial motivation for the arrest, Thacker alleged more than "merely that Officer Blakes and Mr. Grimes were of a different race than [p]laintiff." There was evidence that Blakes disliked the way Thacker, who was white, treated Ager Road tenants, the majority of whom were either Latino or African–American. There was evidence to suggest that Blakes became frustrated when Thacker refused his attempts to mediate the parking dispute, and that Blakes left the management office with his arm around Mr. Grimes. There was undisputed evidence that Blakes stated to the African–American tenant, "[w]e know why he won't give you a parking permit," and that Thacker understood the comment to be "racial." It was also undisputed that Blakes made the decision to arrest shortly after Thacker responded to Blakes' comment.

In *Nelson*, we recognized that an inference of malice may be raised by evidence that reasonably could be interpreted to suggest that the decision to arrest was motivated or unduly influenced by the arresting officer's racial hostility and animus. *See Nelson*, 121 Md.App. at 494–95, 710 A.2d 345. Here, it would not be unreasonable for a fact-finder to conclude that Blakes believed Thacker was raciall; · prejudiced, and that he had acted on that prejudice by discriminating against tenants generally, by discriminating against Grimes in particular, and/or by resisting Blakes' attempts to resolve this or other disputes. A jury could reasonably infer from the

---

**10.** The circuit court held that

[p]laintiff merely alleges that Cpl. Blakes may have been racially motivated because he and [the tenant] are of a different race than Plaintiff. He further contends that, because Cpl. Blakes conceded in his deposition testimony that Plaintiff had not acceded to the City's suggestion that its officers be employed in a part-time capacity to provide additional security for the apartment complex, Cpl. Blakes thereby admitted an evil motivation toward Plaintiff. Nothing in Cpl. Blakes' testimony, or that of any other witness proffered by Plaintiff, establishes that linkage.

evidence that Officer Blakes acted out of racial animus by making an arguably quick and unlawful arrest on the basis of his anger and hostility toward Thacker's perceived racial prejudice and discriminatory conduct.

Similarly, we conclude that there was sufficient evidence from which a fact-finder could infer that the arrest was motivated by the arresting officer's financial animus toward the arrestee.[11]   There was evidence that Thacker had refused repeated suggestions by Hyattsville police officers that off-duty police officers be hired to provide extra security for the apartment complex, and considered the suggestions to be "extortion."   In addition, there was evidence that Blakes was aware of Thacker's refusals to hire off-duty officers, and that Blakes himself earned extra money working as an off-duty security officer.   From the evidence presented to the circuit court, a jury might conclude that Thacker's arrest was motivated by ill will or spite arising from Thacker's refusal to hire Hyattsville officers for off-duty work, or a desire to intimidate Thacker into acceding to such employment.

In doing so, we emphasize that it is not necessary for plaintiffs to prove that Blakes actually admitted any "evil motivation," either to defeat summary judgment or to prevail at trial.   The circuit court correctly noted that Blakes' admission that he was aware of plaintiffs' refusal to hire off-duty officers did not constitute an admission of "evil motivation,"

---

11.   Although we found no Maryland cases specifically recognizing that malice may be shown by proof of a financial animus, we conclude that sufficiently specific allegations and proffers of evidence tending to show that the disputed arrest was motivated or unduly influenced by the arresting officer's private financial reasons might raise an inference of malice.   *Cf., e.g., Caruso v. Abbott,* 133 Cal.App.2d 304, 284 P.2d 113, 116–17 (1955) ("If a group of officials conspire to exceed their authority, even to the point of violation of express statutes governing their conduct, and for the sole purpose of their private business advantage, they cannot reasonably expect extension of the shelter of official immunity to their acts"); *Young v. Hansen,* 118 Ill.App.2d 1, 249 N.E.2d 300, 304 (1969) ("a public official may not hide behind the cloak of immunity if he maliciously and intentionally misuses the powers of his office" to interfere with plaintiff's business).

and that there was no other testimony that specifically "establishes that linkage." The lack of such evidence, however, is not necessarily grounds for summary judgment. "Actual malice does not always have to be shown with specificity; it can be inferred." *Leese,* 64 Md.App. at 480, 497 A.2d 159. Neither admissions nor testimonial "linkage" are essential to plaintiffs' case, because it is the role of the fact-finder, examining and weighing all of the evidence, to "establish linkage" between the evidence, the inference, and the findings of fact. *See Okwa, supra,* 360 Md. at 174–75, 757 A.2d 118. Indeed, "establishing linkage" by drawing, examining, and resolving inferences from the evidence is the ultimate task of any fact-finder.

We also find merit in plaintiffs' contention that, beyond the limited evidence cited by the circuit court in its memorandum opinion, there is additional evidence that may support an inference of malice in this case. A fact-finder may consider a history of animosity or "personality conflict" in evaluating the arresting officer's actions. *See Leese,* 64 Md. App. at 480–81, 497 A.2d 159. In this case, Blakes admitted that, based on his past experiences in responding to calls from Thacker, he disliked Thacker, disapproved of the way he dealt with Ager Road tenants, and felt that he was the worst manager he had seen in his eight years on the police force. He disagreed with and tried to change Thacker's decision not to issue the parking permit. The testimony of Thacker, Battle, and Grimes could be interpreted to suggest that Blakes' decision to arrest resulted from his dislike of Thacker, or from his anger and frustration at Thacker's actions, and not because of any public disturbance. When all of the evidence is considered in context, a fact-finder could conclude that, even if Blakes did not have any specific racial or financial animus, nevertheless, he made the decision to arrest out of "ill will and spite" toward Thacker, in reaction to what he perceived to be Thacker's disagreeable personality, unfair management, and/or disrespectful conduct. "So long as a reasonable inference may be drawn one way or the other, ... there is a

dispute of fact that takes the case to the jury." *Nelson,* 121 Md.App. at 495, 710 A.2d 345.

In addition to these disputed inferences of "motive," our review of the record also reveals a number of disputes regarding facts that a jury might consider material in determining whether Blakes acted with malice, and that require a fact-finder to resolve critical questions of credibility. *See Okwa, supra,* 360 Md. at 174–75, 757 A.2d 118. For example, whether Blakes' comment that "[w]e know why he won't give you the permit" was intended to be an accusation of racial discrimination may require credibility judgments. Further, there are numerous factual disputes regarding Thacker's actions after Blakes and the tenant left the office, including what Thacker said (e.g., single comment or multiple taunts), what Officer Blakes said (single arrest warning or multiple warnings), Thacker's demeanor (e.g., "never out of control" or loud, yelling, profane, "belligerent," and persistent), what Thacker did (e.g., stayed on the office steps or closely followed behind Blakes and Grimes to the police cruisers), whether and when Ms. Battle came out of the office (e.g., not at all, after the arrest, or before the arrest), and whether Thacker created a disturbance (e.g., nobody there to disturb or disturbing Grimes and elderly resident at window).

These factual disputes involve several witnesses, and raise classic credibility issues of bias, perception, and reliability. Clearly, the resolution of these questions could materially affect a fact-finder's decision on the question of malice. If resolved in Thacker's favor, as it must be on summary judgment, such evidence could support his contention that malice can be inferred from an arrest that was so lacking in probable cause and legal justification as to render Officer Blakes' stated belief in its existence unreasonable and lacking in credibility.[12]

12. Our conclusion that the evidence sufficiently raises an inference of malice within the meaning and context of our previous decisions makes it unnecessary for us to decide plaintiff's contentions that a showing of lack of probable cause would constitute "malice *per se,*" or that there is some alternative, less stringent standard for pleading and proving

*See Okwa, supra,* 360 Md. at 177–78, 757 A.2d 118 ("A measure of distinction exists between acceptable assertiveness and disorderly conduct. We think that [the arrestee is] entitled to have a fact-finder resolve this distinction").

For these reasons, Office Blakes was not entitled to summary judgment on the basis of qualified immunity. Accordingly, after considering the qualified immunity claims of the other municipal defendants, we must proceed to consider whether summary judgment in Blakes' favor was appropriate on alternate grounds.

### 3.

### Immunity Claims Of The City

If Blakes acted with malice, which remains to be determined, then the City of Hyattsville ("City") may be held vicariously liable for the torts of its employee. *See, e.g., Town of Port Deposit,* 113 Md.App. at 420–23, 688 A.2d 54 (municipality may be vicariously liable when police officer's intentional conduct constitutes a constitutional tort); *Williams,* 112 Md.App. at 548, 685 A.2d 884 (under Local Government Tort Claims Act, claim may be made against municipality based on judgment against employee); CJ § 5–303(b) ("a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment"); CJ § 5–303(e) (local government may assert employee's common law or statutory defense or immunity when claim against it is premised on employee's tortious conduct, and "may ... be held liable to the extent that a judgment could have been rendered against such an employee"). Whether the claims that have been asserted against the City based on the allegations of Blakes' intentional torts are premature due to the lack of a judgment against Blakes is a question that was not raised

---

malice than the one applied here. We do note, however, that plaintiff cites no authority to support these contentions.

in or decided by the trial court, and therefore is not before us in this appeal. *See, e.g.*, Md. Rule 8–131(a) (appellate court may not decide issue not raised in or decided by trial court); *Bishop v. State Farm*, 360 Md. 225, 233–34, 757 A.2d 783 (2000) (after reversing grant of summary judgment, appellate court generally may not "speculate that summary judgment might have been granted on other grounds not reached by the trial court") (quoting *Gresser v. Anne Arundel County*, 349 Md. 542, 552, 709 A.2d 740 (1998)); *Davis v. DiPino*, 337 Md. 642, 648–49, 655 A.2d 401 (1995) (when appellate court determines that trial court erred in granting summary judgment because there was a genuine issue of material fact, the court should reverse and remand the case for further proceedings, and should not sua sponte raise and grant a motion to dismiss for failure to state a claim upon which relief may be granted on grounds first raised on appeal).

### 4.

### Qualified Immunity Claims Of Other Defendants

Plaintiffs cannot rely on the same evidence presented against Blakes to establish an inference that the other defendants acted with malice. Under section 5–507, each municipal official is independently entitled to qualified immunity for discretionary acts performed without malice. Thus, plaintiffs cannot rely upon vicarious liability principles, but must proffer evidence to show that each one of these defendants acted with malice. The problem for plaintiffs, however, is that there is no evidence whatsoever that any of these defendants participated in the decision to arrest, which is the only specific discretionary act about which Thacker has proffered sufficient evidence to survive summary judgment.

There is no evidence that either of the other two officers at the scene participated in the decision to arrest Thacker. Plaintiffs cannot rely upon pure speculation, or the

routine arrest practice of "command and cover," to conjure up a malicious conspiracy to arrest claim. Indeed, that sort of speculative hypothesizing is precisely what the qualified immunity defense is designed to curtail.

Similarly, there is no evidence that any of the other municipal defendants acted with malice.[13] The circuit court properly concluded that plaintiffs had failed to state any facts or offer any evidence to support their bare allegations of negligent supervision, negligent training, and negligent retention. We note that, in any event, evidence of such negligence would not constitute evidence of malice, and, therefore, would not be sufficient to prevent summary judgment on qualified immunity grounds.

In the absence of any specific evidence of malice, or of any allegation of constitutional violations [14] on the part of these municipal officials, summary judgment was appropriate. For these reasons, we affirm the circuit court's entry of summary judgment in favor of appellees Prangley, Perry, Phillips, Hunter, McCully, and the City Council.

---

**13.** Plaintiffs complain that the circuit court's ruling in favor of these defendants was "premature." At the summary judgment hearing, counsel complained that defendant Police Chief Perry had not been produced for deposition, in violation of the circuit court's order. We find that the circuit court properly concluded that, in light of plaintiffs' failure to plead or proffer any specific facts suggesting that Perry or any of the defendants other than Blakes participated in the decision to arrest, plaintiffs were not entitled to delay a ruling on the motion pending such deposition.

**14.** Public officials generally are not immune from civil liability for violations of an individual's state constitutional rights. *See Ashton v. Brown*, 339 Md. 70, 118, 660 A.2d 447 (1995); *see also City of District Heights*, 123 Md.App. at 517, 719 A.2d 998. As discussed *infra*, we conclude that plaintiffs have neither alleged nor proffered sufficient evidence to raise an inference that any of these six municipal defendants committed any constitutional violations. Since only the City may be held vicariously liable for any constitutional violations committed by Officer Blakes, summary judgment in favor of these six defendants was appropriate on the claim for violations of Thacker's state constitutional rights.

## III.

### Propriety Of Summary Judgment In The Absence Of Qualified Immunity

Apart from its finding of qualified immunity, the circuit court found alternative grounds to grant summary judgment on many counts of the complaint. Because we have held that Officer Blakes and the City were not entitled to summary judgment on qualified immunity grounds, we must determine whether either of these defendants was entitled to summary judgment on such alternate grounds. We shall address each claim separately.

### A.

### Defamation

Appellant Thacker complained that he was defamed because Officer Blakes

told [Thacker] he was a bad manager, ordered him to 'shut up', told him he would be arrested if he didn't shut up, made threatening and disparaging gestures, and did otherwise by conduct and words disparage, and slander, intimidate, frighten, ridicule him in the presence of his office staff, the tenant, bystanders and each other, all of which statements are untrue.

At the summary judgment hearing, the circuit court granted summary judgment in favor of all defendants on the defamation claim, because there was no evidence that the allegedly defamatory statements were "overheard by anybody that actually changed their opinion of Thacker as a result of what was said."

On appeal, Thacker does not offer any reason why this "lack of damage" ruling is erroneous, but instead argues only that "a reasonable inference from Blakes' comments … is that [Thacker] wouldn't give [Grimes] the parking permit because Grimes was black" and that Blakes "had stated the defamato-

ry words in the presence of Grimes" and another resident. We shall affirm the unchallenged "lack of damage" ruling.

◼ To establish a *prima facie* case of defamation, the plaintiff must allege that (1) the defendant made a defamatory communication, i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement to be defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm.

*Agora, Inc. v. Axxess, Inc.,* 90 F.Supp.2d 697, 701 (D.Md. 2000); *see Rosenberg v. Helinski,* 328 Md. 664, 675, 616 A.2d 866 (1992), *cert. denied,* 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993).

◼ Blakes' comment allegedly insinuating racial prejudice is a derogatory opinion. Although there is no "wholesale defamation exception for anything that might be labeled as 'opinion'," the Supreme Court has recognized that if a statement is not provable as false or is not reasonably interpretable as stating facts, then it cannot form the basis of a defamation suit. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990). In Maryland, when a statement is made in the form of an opinion, it becomes actionable "only if it implie[s] the allegation of undisclosed facts as the basis for the opinion." *Peroutka v. Streng,* 116 Md.App. 301, 323, 695 A.2d 1287 (1997). In *Peroutka,* we explained that when a defendant

bases his expression of a derogatory opinion on the existence of 'facts' that he does not state but that are assumed to be true by both parties to the communication, and if the communication does not give rise to the reasonable inference that it is also based on other facts that are defamatory, he is not subject to liability, whether the assumed facts are defamatory or not.

*Id.* at 323–24, 695 A.2d 1287 (quoting Restatement (Second) of Torts § 566 cmt. c (1976)).

Even if we assume that Blakes' opinion implied that Thacker refused the tenant's request for a parking permit because the tenant was African–American, Thacker still has not alleged or proffered evidence that he suffered any injury as a result of this particular comment. The gravamen of Thacker's injury allegations is that Thacker was harmed by the *arrest*, and not by an accusation of racial prejudice. Thacker has asserted other causes of action seeking compensation for damages allegedly caused by the arrest. Since there is no "defamation by arrest" cause of action in Maryland, the circuit court properly granted summary judgment in favor of Blakes and the City on the defamation claim.

## B.

### Assault and Battery, False Arrest, False Imprisonment, And Malicious Prosecution

Because the sole grounds for summary judgment in favor of Blakes on these five counts was the circuit court's erroneous finding that there was no evidence of malice, Blakes and the City were not entitled to summary judgment on these counts. We shall reverse the judgment entered in favor of Blakes and the City on these counts, and remand for further proceedings consistent with this opinion.

## C.

### Violation Of Maryland Declaration of Rights

Blakes is not entitled to summary judgment on this count for constitutional violations, because material disputes of fact remain as to whether Blakes is entitled to the qualified immunity afforded under section 5–507.

The City has no immunity in tort actions based on violations of the Maryland Constitution. *See Housing Authority of Balt. City, supra,* slip op. at 1.

## D.

### Intentional Infliction Of Emotional Distress

Plaintiffs contend that the trial court erred in dismissing the claim for intentional infliction of emotional distress, because "under these circumstances, the extent of Thacker's emotional distress, albeit with instructions of the court as to the severity necessary to support the tort of intentional infliction of emotional distress, is a matter of finding of fact for the jury . . . ."

To support a *prima facie* claim for intentional infliction of emotional distress, a plaintiff must show: (1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress is severe. *See Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977).

In order for distress to be sufficiently severe to state a claim for intentional infliction of emotion distress, "the plaintiff [must] show that he suffered a *severely* disabling emotional response to the defendant's conduct," and that the distress was so severe that "no reasonable man could be expected to endure it." *Harris*, 281 Md. at 570–71, 380 A.2d 611 (citation omitted). For example, in *Caldor v. Bowden*, 330 Md. 632, 625 A.2d 959 (1993), the Court of Appeals rejected a plaintiff's claim that his emotional distress was severe when the proffered evidence showed only that as the plaintiff was removed from a store in handcuffs, he was "upset" and "embarrassed," but that after the arrest, he "continued to do the same things that he did prior to the incident." *Id.* at 642–44, 625 A.2d 959.

Similarly, Thacker has failed either to plead or proffer evidence to show that his emotional distress was severe. His claims of fear during the arrest, and subsequent humiliation and distrust of the police fall far below the requisite pleading standard for this claim. Moreover, in light of the undisputed evidence that Thacker has continued his employment at Ager Road, and the complete lack of any evidence

that he could not continue with his normal life activities or that he sought any professional treatment for his alleged distress, we shall affirm summary judgment on this count of the complaint.

### E.

### Interference With Contract

The sole count pled on behalf of appellant Melvin Berman, as general partner of the partnership that owns Ager Road and employs Thacker, is a claim for intentional interference with contract. Thacker and Berman contend that the defendants interfered with their contractual relationships by causing the partnership to pay legal fees for Thacker's defense of the disorderly conduct charge and otherwise damaging it in the affairs of its business.

The Court of Appeals has long recognized the tort of intentional interference with contract or with other economic relations in a commercial context. Unlike some jurisdictions, the Court of Appeals has "required not only a specific purpose to interfere, but also that the interfering conduct be independently wrongful or unlawful." *Geduldig v. Posner*, 129 Md. App. 490, 506–07, 743 A.2d 247 (1999)(citing *Alexander & Alexander v. B. Dixon Evander & Assocs.*, 336 Md. 635, 657, 650 A.2d 260 (1994)).

The circuit court properly recognized that the mere allegation that Ager Road incurred legal expenses to provide Thacker with counsel is not sufficient to state an actionable claim for interference with contract or prospective economic advantage. Plaintiffs have not alleged in the complaint that any particular contract or relationship was interfered with, much less any allegation or proof of wrongful interference or intent to interfere. Instead, the count reads more like a hybrid "defamation by false arrest" claim, which, even if it existed, would be completely covered by plaintiffs' other claims for false arrest, false imprisonment, and malicious prosecution. We shall affirm summary judgment on this count.

JUDGMENT FOR APPELLEES MAYOR MARY PRANGLEY, CITY COUNCIL OF THE CITY OF HYATTSVILLE, POLICE CHIEF ROBERT T. PERRY, CPL. GREGORY PHILLIPS, PVT. LIMUEL HUNTER, AND SGT. WAYNE McCULLY AFFIRMED.

JUDGMENT FOR APPELLEES CPL. GARY BLAKES AND CITY OF HYATTSVILLE AFFIRMED AS TO COUNTS I, VIII, AND IX, AND REVERSED AS TO COUNTS II, III, IV, V, AND VII, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLANTS AND APPELLEES, BLAKES AND CITY OF HYATTSVILLE EQUALLY.